# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

EZELL THOMAS CUTTRAY,

        Plaintiff,

v.                                             Case No:   6:21-cv-725-LHP

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant

---

### MEMORANDUM OF DECISION[1]

Ezell Thomas Cuttray ("Claimant") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Disability Insurance Benefits ("DIB").   Doc. No. 1.   Claimant raises two arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed for an award of benefits, or alternatively, remanded for further administrative proceedings. Doc. No. 30, at 21.   The Commissioner asserts that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and that the final decision of the Commissioner

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 20 & 28.

should be affirmed.   *Id.*   For the reasons stated herein, the final decision of the Commissioner is **AFFIRMED.**

## I.   PROCEDURAL HISTORY.

On January 25, 2019, Claimant filed an application for Disability Insurance Benefits ("DIB"), alleging a disability onset date of October 20, 2015.[2]   R. 176. Claimant's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ.   R. 62-88, 91-101.   A hearing was held before the ALJ on June 4, 2020, at which Claimant was represented by Attorney Elizabeth Cline.[3]   R. 26, 29.   Claimant and a Vocational Expert ("VE") testified at the hearing.   R. 32-60.

After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled.   R. 11-20.   Claimant sought review of the ALJ's decision by the Appeals Council.   R. 7-11.   On February 17, 2021, the Appeals Council denied the request for review.   R. 1.   Claimant now seeks review of the final decision of the Commissioner by this Court.   Doc No. 1.

---

[2] The "Application Summary for Disability Insurance Benefits" states that Claimant applied for DIB on January 28, 2019, but according to the ALJ's decision, Claimant filed the application for DIB on January 25, 2019.   *Compare* R. 12, *with* R. 176.   For consistency, and because the application date is not dispositive of this appeal, the Court utilizes the application date stated by the ALJ:   January 25, 2019.

[3] The Claimant is represented by Andrew S. Youngman, a non-attorney representative. Elizabeth Cline is an attorney with Mr. Youngman's firm who appeared on behalf of and represented the Claimant by telephone at the hearing.   R. 12, 26, 29.

## II.    THE ALJ'S DECISION.[4]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a).   R. 9-20.[5]   The ALJ found that the Claimant last met the insured status requirements of the Social Security Act (SSA) on June 30, 2017.   R. 14.   The ALJ also found that Claimant had not engaged in substantial gainful activity during the period from his alleged onset date of October 20, 2015 through his date last insured of June 30, 2017.   R. 14.   The ALJ further concluded that Claimant suffered from the following severe impairments:   fracture of lower extremity and post-traumatic stress disorder ("PTSD").   R. 15.[6]   The ALJ concluded that Claimant did not have an impairment

---

[4] Upon a review of the record, counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum.   Doc. No. 30.   Accordingly, the Court adopts those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[5] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled:   (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ('RFC') assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(i)–(v), 416.920(a)(i)–(v)).

[6] The ALJ also concluded that Claimant had non-severe impairments of cocaine abuse, with such use ending prior to the alleged October 20, 2015 onset date.   R. 15.

or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   R. 15-16.

After careful consideration of the entire record, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform medium work as defined in the Social Security regulations,[7] with the following additional limitations: "The claimant can frequently climb, balance, stoop, kneel, crouch, or crawl.   The claimant is limited to simple, routine, and repetitive tasks. The claimant is limited to occasional interaction with others."   R. 16.   The ALJ also noted that Claimant was unable to perform any past relevant work.   R. 18-19.   However, considering Claimant's age, education, work experience, and RFC, as well as the testimony of the VE, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Claimant could perform, including warehouse worker, hand packer, and industrial cleaner.   R. 20.   Accordingly, the ALJ concluded that Claimant was not disabled at any time from October 20, 2015 through the date last insured.   *Id.*

## III.   STANDARD OF REVIEW.

Because Claimant has exhausted his administrative remedies, the Court has

---

[7] Pursuant to the Social Security regulations, "[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.   If someone can do medium work, [the SSA] determine[s] that he or she can also do sedentary and light work."   20 C.F.R. §§ 404.1567(c), 416.967(c).

jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3).   The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence.   *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).   The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## IV.   ANALYSIS.

In the Joint Memorandum, which the Court has reviewed, Claimant raises two assignments of error:   (1) the ALJ erred in relying on the testimony of the VE

because there is an unresolved conflict between the VE's testimony and the *Dictionary of Occupational Titles* ("the DOT"); and (2) the ALJ erred when she did not fulfill her duty to fully and fairly develop the record.   Doc. No. 30, at 6-8, 13-15. The Commissioner, on the other hand, contends that:   (1) the there was no conflict between the VE testimony and the DOT; and (2) the ALJ was not required to further develop the record.   *Id.*, at 8-13, 15-21.

        A.      *The VE's Testimony and the DOT.*

At step five in the sequential inquiry, "the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform."  *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).   The ALJ may consider "both jobs' data drawn from the DOT as well as from the testimony of the vocational expert ("VE") in making this determination." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1360 (11th Cir. 2018).

Social Security Ruling 00-4p ("SSR 00-4p") provides, in pertinent part, as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.   At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2.[8]   The Eleventh Circuit has held that the ALJ has a duty to resolve any apparent conflicts between a VE's testimony and the DOT, even if the VE does not affirmatively state that such a conflict exists.   *See Washington*, 906 F.3d at 1356 (finding that pursuant to SSR 00-4p, "ALJs within the SSA have an affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them.   This duty requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT.").   A conflict is "apparent" if it is "reasonably ascertainable or evident" from a comparison of the VE's testimony and the DOT.   *Id.,* at 1365–66.

Here, the ALJ accepted testimony from a VE who Claimant agreed was qualified.   R. 47.   The ALJ asked the VE to consider a hypothetical individual with the Claimant's age, education level, past work background, a medium exertional level with the following restrictions: "[f]requent postural, meaning balancing, kneeling, stooping, crouching, crawling, or climbing; *simple, routine, and repetitive tasks*; occasional interaction with others."   R. 54 (emphasis added).   The ALJ asked the VE if there were jobs in the national economy that this hypothetical person could

---

[8] SSRs are binding on the SSA, but they are not binding on this Court.   *See Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) ("Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration.   Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." (citing *B.B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981))).

perform.   R. 55.   The VE testified that the hypothetical person could perform the jobs of laborer/warehouse worker (DOT #922.687-058[9]), medium, SVP 2 with approximately 94,000 jobs available nationally; hand packer (DOT # 920.587-018), medium strength, SVP 2 with approximately 260,000 jobs available nationally; and industrial cleaner (DOT # 381.687-018), medium strength, SVP 2 with approximately 1,750,000 jobs available nationally.   R. 55.   The VE confirmed that her testimony was consistent with the DOT.   R. 55.

According to the DOT, the jobs of warehouse worker, hand packer and industrial cleaner all have a reasoning level of two.   *See* DOT 922.687-058, *available at* 1991 WL 688132; DOT 920.587-018, *available at* 1991 WL 687916; DOT 381.687-018, *available at* 1991 WL 673258.   Pursuant to the DOT, jobs with a reasoning level of two "require the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions."   *See* DOT Appendix C, *available at* 1991 WL 688702.

---

[9] "The DOT numbers refer to the Dictionary of Occupational Titles and its detailed explanations concerning each occupation's requirements.   These descriptions include exertion and skill levels.   Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy and very heavy.   Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the 'SVP' (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled."   *Jones v. Comm'r of Soc. Sec.*, No. 8:19-cv-1415-T-NPM, 2020 WL 8669680, at *3 n.4 (M.D. Fla. Nov. 30, 2020).

On cross-examination, Claimant's attorney and the VE had the following exchange:

> Attorney: . . . Would the limitation to simple, routine, repetitive, tasks preclude the ability to carry out detailed written or oral instructions?

> VE:   Yes.   If it's – I look at it, if it's – the reasoning is a 3.   The jobs I provided, I think, the reasoning was just a 2.

R. 56.   After the Claimant's attorney performed her cross-examination, the ALJ sought to clarify the reasoning levels of the jobs the VE named.   R. 57.   The VE stated that industrial cleaner was reasoning level 1, and that hand packer, laborer, and warehouse worker were all reasoning level 2.   R. 57-58.[10]

Claimant contends that the VE's testimony was confusing and unclear, and conflicts with the DOT, and that the ALJ erred for failing to resolve this apparent conflict.   Doc. No. 30, at 8.   Specifically, Claimant argues that an individual limited to simple, routine and repetitive tasks would not be capable of carrying out jobs requiring an employee to carry out detailed but uninvolved instructions.   *Id.* The Commissioner disagrees.   *Id.,* at 8-13.

The Court acknowledges that the testimony exchange between the attorney, the ALJ, and the VE may have been somewhat unclear. Nevertheless, the VE's testimony did not create any apparent conflict that required resolution by the ALJ.

---

[10] The parties agree that the VE was mistaken as to industrial cleaner, and that all representative occupations are reasoning level 2.   *See* Doc. No. 30, at 7 n.2, 9.

The ALJ's RFC contained a limitation to "simple, routine, and repetitive tasks," and the jobs identified by the VE all required a reasoning level of 2, or lower.   R. 16, 55-58.   As this Circuit has held, there is no apparent conflict between an RFC limitation to simple, routine, and repetitive tasks, and jobs listed in the DOT with reasoning level 2.   *See Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1323 (11th Cir. 2021) (holding that there is no apparent conflict between an RFC that limits a claimant to the ability to "understand, carry-out, and remember simple instructions," and positions identified in the DOT with a reasoning level of 2); *Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("We conclude that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning."); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (noting that an RFC limitation to simple, routine, repetitive tasks is not inconsistent with a reasoning level of two); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011) (finding no apparent conflict between RFC limitation to "simple, routine tasks with limited contact with the public" and reasoning levels 2 and 3); *see also Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, at *1 (M.D. Fla. July 21, 2020) (holding that *Valdez* "determines that no apparent conflict exists between a limitation to a 'simple' task and a finding that the petitioner can perform a job with a reasoning level of 2."); *James v. Comm'r of Soc.*

*Sec.*, No. 2:19-cv-869-FTM-MRM, 2021 WL 973498, at *10 (M.D. Fla. Mar. 16, 2021) ("As an initial matter, the Court finds that there is no apparent conflict between the limitation to 'simple, routine, and repetitive tasks' and an occupation with a reasoning level two.").

Based on this binding and persuasive authority, the Court finds that no apparent conflict exists in this case between the RFC limitation to jobs with simple, routine, and repetitive instructions and an occupation requiring a reasoning level of 2.   Because there was no apparent conflict, the ALJ was under no duty to conduct any further analysis, and the ALJ's decision was supported by substantial evidence. Accordingly, the Court rejects Claimant's first assignment of error.

> B.   *Duty to Fully Develop the Record.*

Claimant next argues that the ALJ erred by failing to fully develop the record by obtaining a mental health functional opinion, even though the ALJ found Claimant to suffer from a severe impairment (PTSD) and included a mental limitation in the RFC.   Doc. No. 30, at 13-15.   In response, the Commissioner argues that the ALJ was in possession of sufficient evidence to make an informed decision and had no duty to further develop the record, and that Claimant has not established any evidentiary gaps that resulted in unfairness or clear prejudice to Claimant.   *Id.*, at 15-20.

"[T]he claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted). Nonetheless, the ALJ has a basic duty to develop a full and fair record. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).[11]

The Social Security regulations provide that the Commissioner will develop a claimant's medical history for at least 12 months preceding the month in which a disability application is filed. 20 C.F.R. § 416.912(b)(1) ("[W]e will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *see also Ellison,* 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)). "Generally, the duty to develop the record is required due to the inquisitorial nature of the administrative proceedings." *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, at *5 (M.D. Fla. Feb. 22, 2021) (citations omitted). The "duty to develop the record is triggered when there is

---

[11] The basic duty to develop the record rises to a "special duty" where the claimant is not represented during the administrative proceedings. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995). Here, Claimant was represented by counsel during the administrative proceedings so only the basic duty applies. *See* R. 44.

ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Bowers v. Astrue*, No. 5:07-cv-82-Oc-10GRJ, 2008 WL 3833239, at *6 (M.D. Fla. Aug. 13, 2008).

"The Commissioner's duty to develop the record includes ordering a consultative examination if one is needed to make an informed decision." *Id.* However, "[o]rdering a consultative examination is a discretionary matter for the ALJ and would be sought 'to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision' on the claim." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017); *see also* 20 C.F.R. § 404.1519a(b) (listing situations that may require a consultative examination); *Medwit*, 2021 WL 1341390, at *6 ("But, because the Social Security Act only requires substantial evidence to sustain an ALJ's findings, an ALJ need not obtain a consultative examination to determine with absolute certainty whether a claimant has a particular impairment.   In other words, an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision.") (citations and quotations omitted).

Before the court will remand a case for further development of the record, there must be a showing that the ALJ's failure to develop the record led to evidentiary gaps that resulted in unfairness or clear prejudice.   *Graham*, 129 F.3d at

1423 (citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)); *see also Cox v. Astrue*, No. 5:11–CV–02319–LSC, 2012 WL 4008953, at *5 (N.D. Ala. Sept. 12, 2012) ("Plaintiff must show that the lack of records created an evidentiary gap, resulting in unfairness or clear prejudice." (citing *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir.1991))).   To establish an evidentiary gap in the record, Claimant must "identify what facts could have been submitted that would have changed the outcome." *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016) (citing *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991)). Additionally, clear prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision."   *Kelly v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).   Stated differently, "[p]rejudice may be shown where the ALJ has failed to elicit relevant testimony, consider all evidence in the record, or where the record contains evidentiary gaps resulting in unfairness or clear prejudice." *Sharpe v. Comm'r of Soc. Sec.*, No. 8:18-cv-2940-T-JSS, 2020 WL 995851, *4 (M.D. Fla. Mar. 2, 2020) (citations omitted); *see also Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (Claimant failed to show prejudice for failure to develop the record as claimant did "not explain how the absence of [the discussed evidence] precluded the ALJ from making an informed disability determination. Nor does

[claimant] explain how such an assessment would have affected the ALJ's overall disability determination.").

Here, according to the medical evidence of record, Claimant has been diagnosed with some level of depression and/or PTSD since December 14, 2015. *See, e.g.*, R. 462-64, 484-86, 490-91, 542, 1137, 1141, 1194.   However, there is no evidence that Claimant was ever *treated* for his PTSD, a fact that Claimant himself admitted, nor are there any medical opinions discussing the impact, if any, of Claimant's PTSD on his ability to work.   R. 18 ("However, the claimant also acknowledged that he had never been treated for his symptoms.").

Taking all of the available evidence, including Claimant's own testimony into account, the ALJ stated as follows with respect to Claimant's PTSD:

> Regarding the claimant's post-traumatic stress disorder ("PTSD"), the undersigned finds the extent of his limitations not as severe as alleged. The claimant reports that he has PTSD from his prior military service.   Specifically, the claimant served as a flying crew chief on rescue C-130s and that eight of his colleagues were killed in the Khobar Towers Bombing in 1996 during their deployment (Exhibit 3F).   The claimant reports that he is haunted by their deaths.

> In September 2018, more than a year past the claimant's date last insured, he told VA staff psychiatrist Karen O'Kelly that he was experiencing anxiety, difficulty being around people, sadness, hypervigilance, nightmares, and flashbacks (Exhibit 11F, p. 79). However, the claimant also acknowledged that he had "never been treated for his symptoms" (Id.). Therefore, while the claimant alleges a number of PTSD symptoms, his lack of any treatment prior to his date last insured is a large evidentiary impediment to his case.   The undersigned has made some allowances for the claimant by reducing him to a range of simple, routine, and repetitive tasks with no more

than occasional interaction with others.   However, with no treatment prior to his date last insured, there is no evidence to warrant any further mental health limitations.

Regarding opinion evidence, the undersigned was partially persuaded by the non-examining state agency examiners' opinions at both the initial and reconsideration levels that there is insufficient evidence to evaluate the claim. The undersigned found the opinion of the mental health examiners persuasive because the claimant acknowledges in the record that he did not have any treatment for his PTSD prior to his June 30, 2017 date last insured (Exhibits 1A; 4A).

R. 18.

In other words, the ALJ credited Claimant's subjective testimony and self-reports, and the state agency examiners' opinions, but found the lack of any treatment records, and Claimant's acknowledgment that he had not sought treatment, weighed against any more restrictive limitations.   *Id.*

Upon review, Claimant's contention that the ALJ failed to fully develop the record does not merit reversal because the transcript shows the ALJ fully evaluated Claimant's testimony and years of documented medical history regarding Claimant's mental health issues.   The ALJ did consider the medical record as a whole – which established that Claimant had reported PTSD symptoms but did not receive any treatment for them during the relevant time period.   In addition, the ALJ considered the state agency examiner's mental health evaluations, which also noted the lack of evidence of any treatment for PTSD prior to the date late insured.   Thus, the record contained "sufficient evidence for the ALJ to make an informed

decision." *Ingram*, 496 F.3d at 1269 (11th Cir. 2007); *see Medwit*, 2021 WL 1341390, at *5-7 (ALJ did not err in not arranging for a consultative exam after reviewing physical examinations and considering claimant's own testimony related to shoulder pain and finding that after "review[ing] years of medical evidence with little or no treatment notes indicating any shoulder pain" the "record contained sufficient evidence for the ALJ to make an informed decision, and [the ALJ] did not violate any duties to develop the record."); *Bowers*, 2008 WL 3833239, at *5-7 ("Accordingly, the ALJ was not required to order a consultative evaluation before concluding that Plaintiff's [mental] impairments were not severe. On the contrary, the record, although limited, was sufficient for a decision and additional expert testimony was unnecessary."); *Smith v. Comm'r of Soc. Sec.*, 501 F. App'x 875, 879 (11th Cir. 2012) (ALJ did not fail to develop the record and concluded that, though the record indicated a history of anxiety and depression for which the claimant was prescribed medication, nothing in the record indicated the claimant experienced any effects from the mental impairments that could be expected to interfere with her ability to work); *Daniels v. Berryhill*, No. 8:17-cv-00711-AAS, 2019 WL 438046, at *2–6 (M.D. Fla. Feb. 4, 2019) (finding that the ALJ did not fail in its duty to develop the record, and claimant failed to show prejudice in the form of evidentiary gaps created by ALJ's decision not to order a consultative examination, after ALJ considered the only evidence of record on claimant's mental limitations—records

from claimant's primary care physicians).    Because the record contained sufficient evidence for the ALJ to make an informed decision on Claimant's PTSD, the ALJ was not required to order a consultative examination and the ALJ upheld her duty to develop the record. *See, e.g., Ingram*, 496 F.3d at 1269.[12]

Even if the Court were to find the opposite, remand would not be warranted because Claimant has wholly failed to show the required "evidentiary gaps in the record which result in unfairness or clear prejudice."    *Correa*, 2016 WL 7334642, at *4 (citing *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997); *Henderson*, 353 F.

---

[12] In situations where the ALJ committed reversible error for not ordering a consultative examination, the ALJ was faced with far less medical evidence that present in this case, and/or clear evidentiary gaps, which do not exist here.    *See, e.g., Maloy v. Comm'r of Soc. Sec.*, No. 6:12-cv-1730-Orl-TBS, 2014 WL 12625759 (M.D. Fla. 2014) (finding the ALJ failed to develop the record because the ALJ only considered two pieces of evidence post-dating Plaintiff's onset date related to severe low back pain and the Appeals Council previously remanded this case with direction to the ALJ to obtain updated medical evidence); *McClelland v. Comm'r of Soc. Sec.*, No. 6:16-cv-907-Orl-GJK, 2017 WL 1552137, at *2-3 (M.D. Fla. May 1, 2017) (finding ALJ should have ordered a consultative examination because ALJ's own statements exhibited that the record was not sufficient to make a determination as to claimant's mental impairments but the ALJ made a determination that claimant's allegations regarding her mental impairments were not credible); *Highfield v. Saul*, 1:19-CV-23803-JJO, 2020 WL 5706120, at *12 (S.D. Fla. Sept. 24, 2020) (finding that ALJ erred in his duty to develop the record as the record before the ALJ did not contain any medical opinion, mental RFC assessment, or Psychiatric Review Technique ("PRT") assessment relating to claimant's mental impairments); *Sanchez v. Berryhill*, 1:17-CV-163-GRJ, 2018 WL 7351685, at *10 (N.D. Fla. June 29, 2018) (ALJ had duty to order consultative examination where record did not contain any "medical opinion, mental residual functional capacity assessment, or Psychiatric Review Technique ("PRT") assessment and state agency consultants were unable to prepare PRT due to insufficient evidence).    In this case, for example, the ALJ was presented with Claimant's own testimony, medical records establishing diagnoses but no treatment, and the state agency consultants were able to complete a mental residual functional capacity assessment and PRT.    R. 17-18, 28-61, 62-72, 75-86, 462-64, 484-86, 490-91, 542, 906, 1137, 1141, 1194.

App'x at 305).   This burden requires Claimant to identify what facts could have been submitted that would have changed the outcome.   *Id.* (citing *Edwards*, 937 F.2d at 586).   Here, Claimant argues, in conclusory and circular fashion, that remand is automatically required because the ALJ did not order a consultative examination.   Doc. No. 30, at 13-15.   In other words, without identifying any facts, evidence, or testimony that could have changed the outcome, Claimant simply appears to be saying that the prejudice is the failure to order the exam itself.   This is not enough.   *See Slocumb v. Comm'r of Soc. Sec.*, No. 5:16-cv-617-Oc-10PRL, 2017 WL 2889804, at *4 (M.D. Fla. May 15, 2017) ("[T]he only purported prejudice that Plaintiff points to in his brief is the lack of a consultative psychological examination—but it is Plaintiff's duty to show *how* the ALJ's failure to obtain a psychological examination prejudiced her, the mere lack of a consultative examination is inadequate to meet Plaintiff's burden when the record contains sufficient evidence to determine whether she is disabled.") (emphasis in original). *See also Henderson*, 353 F. App'x at 305 (Claimant failed to show prejudice for failure to develop the record as claimant did "not explain how the absence of [the discussed evidence] precluded the ALJ from making an informed disability determination. Nor does [claimant] explain how such an assessment would have affected the ALJ's overall disability determination."); *Correa*, 2016 WL 7334642, at *5 ("The plaintiff fails to establish prejudice because she does not show how the findings from an

updated examination may be different from what the medical evidence already shows.   Thus, there is no medical evidence in the record showing a worsening of her condition, or the presence of a new impairment, that would warrant a consultative examination to determine whether additional functional limitations are appropriate."); *Sextro v. Comm'r of Soc. Sec.*, No. 8:18-cv-1516-T-JSS, 2019 WL 4164963, at *3-4 (M.D. Fla. Sept. 3, 2019) (claimant failed to show prejudice when claimant's counsel provided no objection to the record at the hearing, claimant testified at the hearing about anxiety and nothing in the record showed his anxiety had worsened, and claimant's memorandum states he has not had any recent medical treatment with a mental health specialist).[13]

Because Claimant has not shown that the ALJ had a duty to further develop the record with respect to his PTSD diagnosis, and because Claimant also has not

---

[13] The Court further notes that during the hearing, the ALJ directly asked Claimant's attorney whether there were "any objections to the exhibits in the file." R. 31.   Counsel responded that there was "[n]o objection."   *Id.*   Additionally, the ALJ asked Claimant's counsel whether the record was complete, and Claimant's counsel responded that "[i]t was complete." R. 32.   While not wholly determinative, this certainly lends support to the Court's holding here that the ALJ did not err in her duty to develop the record.   *Sextro*, 2019 WL 4164963, at *4 (noting that claimant's counsel "provided no objection to the medical record" in support of finding no prejudice); *Walters v. Berryhill*, No. 8:17-cv-2304-T-23TGW, 2018 WL 4190138, at *9 (M.D. Fla. Aug. 15, 2018) ("Notably, the plaintiff's attorney at the hearing did not request a consultative examination.   Thus, the plaintiff obviously did not think such an examination was necessary." (citing *Osborn v. Barnhart*, 194 F. App'x 654, 668-69 (11th Cir. 2006)); *Williams v. Comm'r of Soc. Sec.,* 703 F. App'x 780, 783 (11th Cir. 2017) (when the ALJ asked claimant's attorney whether the record contained everything that Claimant wanted the ALJ to consider and Claimant's attorney answered that it did (with the exception of an unrelated record), "[t]he ALJ . . . fulfilled his duty to develop the medical record.").

shown that the lack of a consultative examination resulted in unfairness or clear prejudice, the Court rejects Claimant's second assignment of error.

## V.    CONCLUSION.

Based on the foregoing it is **ORDERED** that:

1.    The Commissioner's final decision is **AFFIRMED**.

2.    The Clerk of Court is **DIRECTED** to enter judgment in favor of Commissioner, and thereafter, to **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on July 25, 2022.

LESLIE HOFFMAN PRICE
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

Unrepresented Parties